JUSTICE NELSON
specially concurs and dissents.
¶67 I concur in our discussion and resolution of Issues 1, 2 and 4.1 dissent from our discussion and resolution of Issue 5. As to that Issue, I would reverse and remand for a new trial.
¶68 One of the most fundamental principles underlying our system of criminal justice is the requirement that the State must prove each element of any offense with which the accused is charged “beyond a reasonable doubt.” The cases are legion. See, In re Winship (1970), 397 U.S. 358, 363-64, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368; State v. Croteau (1991), 248 Mont. 403, 410-11, 812 P.2d 1251, 1255-56. Montana, in fact, has codified this principle, statutorily requiring acquittal where the State fails in meeting this burden of proof-§ 46-16-204, MCA-and by statutorily mandating that trial juries be instructed specifically that in criminal cases, guilt must be established beyond a reasonable doubt-§ 26-1-403(2), MCA.
¶69 To that end, courts have historically found disfavor with any jury instruction that reduces the state’s burden of proof. See, for example, Mullaney v. Wilbur (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508; Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. See also State v. Lundblade (1981), 191 Mont. 526, 530, 625 P.2d 545, 548 (instructions, which, as a whole, fail to apprise the jury that the state has the burden to prove every element of the crime beyond a reasonable doubt, are inadequate).
¶70 Indeed, and of particular importance in the case at bar, this Court has specifically criticized criminal instructions which have included references to a preponderance of the evidence standard within the charge to the jury. See State v. Felker (1903), 27 Mont. 451, 461, 71 P. 668, 671 (an instruction defining “preponderance of the evidence,” though not reversible in view of the other instructions, has no place in a criminal trial); State v. Francis (1920), 58 Mont. 659, 668, 194 P. 304, 307 (an instruction which assumes that facts may be proven by a *400 “preponderance of the evidence” has no place in a criminal trial); Croteau, 248 Mont. at 411, 812 P.2d at 1256 (instruction which effectively reduces state’s burden from “proof beyond a reasonable doubt” to “a preponderance of the evidence” is reversible error). Croteau followed our decisions in State v. Jones (1914), 48 Mont. 505, 523-24, 139 P. 441, 448; State v. Darchuck (1945), 117 Mont. 15, 21, 156 P.2d 173, 175; and State v. Carns (1959), 136 Mont. 126, 139, 345 P.2d 735, 743.
¶71 Here, the trial court, apparently sua sponte and over objection, instructed the jury that the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence, both direct and circumstantial. That, of course, is not a correct statement of the law. The jury must, as noted above, be unanimously convinced that the facts necessary to prove each element of the offense charged are established by the state by competent evidence, beyond a reasonable doubt.
¶72 The fact that the trial court then told the jury not to be “mislead” by the preponderance instruction-a good indication, without more, that the instruction was incorrect even in the court’s view-and the fact that the court also gave a correct reasonable-doubt instruction did not resolve the error. When viewed through the lens of the proper standard of review, these conflicting oral and written instructions “as a whole” were hopelessly confusing.
¶73 I simply cannot agree that the jury could, at one and the same time, be expected to determine the facts from the entirety of the evidence (both direct and circumstantial) by a “preponderance” standard, but still hold the State to its burden of proof beyond a reasonable doubt. Courts should not impose on trial juries the necessity to engage in such mental legerdemain. Inevitably, as here, confusing and improper instructions deprive the accused of his rights to a fair trial and trial by jury guaranteed under Article II, Sections 24 and 26 of the Montana Constitution. Therefore, I would reverse on the basis of the court’s Instruction No. 1 and remand for new trial.
¶74 Similarly, I disagree with our analysis of the court’s giving of Instruction No. 11. The definition of “without consent” at § 45-5-501(1), MCA, is statutorily limited to its use in § 45-5-503, sexual intercourse without consent. Presumably, if the legislature had wanted the “without consent” definition to apply to sexual assault, § 45-5-502, MCA, it would not have so limited the definition. See State v. Haser, 2001 MT 6, n.2, 304 Mont. 63, n.2, 20 P.3d 100, n 2.
¶75 The trial court, in my view, should have instructed that the “without consent” definition did not apply to sexual assault. In failing to do so the court misstated the law to the jury and again mislead the fact finders as to the elements of sexual assault.
*401 ¶76 If, as our opinion states, the “ordinary meaning” of “without consent” (whatever that is) applied to sexual assault, the jury was not so instructed. As far as the fact finders knew, the crime of sexual assault included a “without consent” element that was identical to the “without consent” element of sexual intercourse without consent-a point of law that even the State concedes is incorrect.
¶77 At a minimum, the trial court must explain or define the crime to the jury. State v. Campbell (1972), 160 Mont. 111, 114, 500 P.2d 801, 803. It requires no great leap of logic to conclude that mis-defining the elements of the crime-as the court did here-constitutes as egregious an error as not defining the elements of the crime at all. I would, therefore, reverse on the basis of the court’s Instruction No. 11 as well.
¶78 Finally, while I do not necessarily disagree with the Court’s harmless error analysis as to Issue 3,1 still must express my dismay in the trial court’s allowing testimony detailing the methodology of the rape kit examination. This testimony was wholly unnecessary to establish the victim’s lack of consent-her own testimony was unequivocal on that point and other evidence at trial strongly substantiated her version of the event.
¶79 In my view, testimony concerning the mechanics of the rape kit examination does little except inflame the passions of the jury. While that is bad enough, perhaps even worse is the fact that this sort of testimony is embarrassing and humiliating to the rape victim, who has had to undergo an intimate and uncomfortable procedure at a time when she has been violated physically, mentally and emotionally. To require the victim to endure having the mechanics of this medical/forensic procedure recounted in a public trial, to one’s peers in the community, should not be countenanced except under the most extreme and necessary circumstances-none of which were at issue here.
¶80 By virtue of the instructional error discussed above, I would reverse and remand for a new trial. I dissent from our failure to do so.